[No. 13466. Department Two. June 16, 1916.]

THE STATE OF WASHINGTON, *Respondent*, v.
HENRY ROBERTS, *Appellant*.[1]

CRIMINAL LAW — TRIAL — CONDUCT OF JUDGE — COMMENT ON EVI-
DENCE. Where a witness for the defendant in a criminal prosecution,
by means of a proper cross-examination by the prosecutor, had al-
ready been discredited for perjury in her testimony on a former
trial relating to the same state of facts, the action of the court in
further examining the witness to ascertain whether she was certain
as to the nature of the testimony previously given and as to the
nature and effect of her testimony in the pending trial would not
constitute a comment on the evidence within the prohibition of
Const., art. 4, § 16.

CRIMINAL LAW—TRIAL—ARREST OF WITNESS FOR PERJURY. Where
a witness admitted the falsity of her testimony on a former trial
involving the same state of facts under examination in a pending
trial, the conduct of the court in having such witness held to answer
for a charge of perjury, during the absence of the jury from the
court room, would not constitute prejudicial error.

PROSTITUTION—PUNISHMENT—EXCESSIVENESS. A sentence of four
year's confinement in the state reformatory against a man convicted
of receiving compensation for causing a female to cohabit with others
than her husband is not so unreasonable as to show abuse of the
court's discretion.

Appeal from a judgment of the superior court for Thurs-
ton county, Mitchell, J., entered November 30, 1915, upon
a trial and conviction of a statutory offense, after a trial on
the merits. Affirmed.

'Reported in 158 Pac. 101.

*C. E. Collier,* for appellant.

*Geo. F. Yantis,* for respondent.

HOLCOMB, J.—Appellant was informed against and convicted of having received compensation for causing a female to cohabit with male persons other than her husband. The date fixed in the information is on or about January 25, 1915. On trial, the state elected to rely upon an offense of date April 10, 1915, and directed all its evidence to that date as to the particular act relied upon for conviction. The case as made by the state was substantially as follows: Henrietta Cairns, the female in question, testified that she and appellant had been acquainted for some time prior to April 10, 1915, she being of the age of about sixteen years; that, about the first of the year 1915, appellant induced her to engage in acts of sexual intercourse with various Chinese, and continued to ply her in such course during the winter and a portion of the spring of 1915, taking her at various times from her home to Chinatown, to the Mitchell hotel, the Columbia hotel, the Tacoma hotel, a Chinese laundry, and the dwelling house occupied by an Austrian fisherman, all in Olympia, Thurston county, for the purpose of meeting the Chinese, appellant compelling witness to such course of conduct by his representations that he was an officer of the law, and by threats of personal violence and exposure and commitment to a reformatory institution. She further testified that, for each of the acts of intercourse, the sum of $2.50 was paid, either directly to appellant or into her hands, to be taken from her later by appellant. On the afternoon of April 10, 1915, she met appellant, accompanied him to her home in the early evening, later returned with him to the downtown portion of Olympia, going to the place referred to as the Austrian shack where she met Chinese, and in front of which place she met the Chinaman Charley Kay whom, together with Roberts, she accompanied to the Mitchell hotel for the act of intercourse relied on for conviction and alleged

to have taken place at eleven o'clock p. m.; that from there she went with appellant to the Tacoma hotel where she engaged in intercourse with other Chinese and a Japanese; that she occupied room 17 of the Tacoma hotel on the night of April 10, after about eleven o'clock, with Roberts, and the next morning or near noon of the next day, she was taken to her home in a jitney bus by one Hazel Hyatt. She fixed the date of April 10 by the fact that she purchased a dress on that date, being the first dress purchased by herself and being charged to her at a local drygoods store on that date. Her father and mother corroborate her testimony that, on that particular date, also fixed by the date of the entry of the purchase of the dress, the witness came to her home early in the evening with appellant, returned with him to the city in the evening after promising to return early to her home, spent the entire night away from home, and returned in a jitney bus about noon on Sunday, the following day. Both parents testified that appellant represented to them that he was an officer of the law. The clerk of the Tacoma hotel testified that appellant engaged room 17 on the afternoon of April 10, as shown by the hotel register. The Chinaman Kay testified to the act of intercourse, and further that he met the girl near the Austrian's shack. Another witness testified to having seen the girl and appellant at or near the back entrance to the Tacoma hotel, apparently going to the back entrance, at about eleven o'clock on some night not definitely fixed in the spring of 1915. This witness also testified that, at about the same time, he saw appellant going toward the back entrance of the same hotel with one whom he took to be a Chinaman.

Appellant did not take the stand in person, but relied on the testimony of one Jean Brownlee to testify to having occupied room 17 at the Tacoma hotel, being the room complaining witness claimed to have occupied on the night of April 10, and on that particular night spending the evening in the company of appellant, and to deny that the girl in

question was in that room on that night. On cross-examination by the prosecutor, it developed that she had testified to the identical facts in a similar case against appellant as to the same room, which case had been tried shortly before the trial of the present case, and had fixed her date by alleging circumstances which she admitted on cross-examination were false. On cross-examination by the prosecutor, this witness testified, that she fixed April 10 as the date on which she came to Olympia by its being on Saturday night and the first week after she had gone to Tacoma where she was looking for work; that she had no employment; that she went back on Sunday morning to pursue her search for work; that she had testified in a case "last week" in which the state was plaintiff and Henry Roberts was defendant in the same court; that she testified in that trial that on April 10, 1915, she was employed by the Lyceum theater in Tacoma; that she went to work there on the Saturday preceding Easter Sunday; that there could be no mistake as to the time in which she was employed; that she had, after testifying in that case, sent a telegram to a person in Tacoma asking that person to verify her statement; that the telegram was to the proprietor of the Lyceum theater; that, as a matter of fact, she had left that place (the Lyceum theater) long prior to the 10th of April; that she found she had been mistaken. Other misstatements of hers while testifying in the previous trial were elicited by the cross-examination of the prosecutor.

The court interrupted the cross-examination by the prosecutor, the following occurring:

"By the Court: May I ask this witness just a few questions and if on the part of either party there is any objection to the questions, you will call it to my attention Mr. Yantis or Mr. Collier. Q. You remember testifying in a cause in court last week against this defendant, do you? A. Yes, sir. Q. Do you remember in the trial of that cause that you were questioned with reference to your occupancy of room 17 in the Tacoma hotel of this city? A. Yes. Q.

And that you answered that you occupied that room that night? A. I did. Q. With reference to your being certain as to the date you testified that it was on the Saturday following Easter? A. Yes. Q. Do you remember if you stated that you were quite sure of the date because you commenced work with the Lyceum theater in Tacoma on or about the third of April and that the 10th was the second Sunday after you had commenced work with the Lyceum theater in Tacoma that you came down here? A. I believe that was one reason I gave for the date. Q. Do you remember if in that examination you were questioned—cross-examined, and that from time to time you stated to the jury which was hearing that cause that there was no question but that it was during the month of April that you worked at the Lyceum theater? A. Yes, sir. Q. Had you at the time that you gave that testimony here in court last week undertaken to verify the facts that you were at work at the Lyceum theater April 3d to April 10? A. No, sir, not at the time I testified. Q. You simply depended on your remembrance? A. Yes, sir. Q. And you now say that that is true, that is, that you did work there during that time? A. No, sir, I found that I was mistaken. Q. And to what extent? A. That it was in October that I had worked there instead of April. Q. In October last year? A. Yes, sir. Q. How have you found that out since you testified last week, from October last year until April of this year? A. By inquiring. Q. Yes. Is it not true that in testifying last week that you said that you knew it was April 10th that you came down here and left the Lyceum theater because it was Saturday after the Easter of this year? A. Yes, sir."

After the foregoing examination by the court, this witness was examined in redirect by counsel for appellant and further cross-examined by the prosecutor, and her testimony as to the inconsistency of her former testimony and the untruthfulness of her testimony was further confirmed. At the conclusion of the further cross-examination by the prosecutor, the court announced, "The jury may be excused at this time for ten minutes." After the jury had retired, the court announced that he would submit to the prosecuting

attorney whether or not an information charging perjury should be filed against witness Brownlee, which was thereupon done by the prosecuting attorney, and witness was placed in the care of the sheriff, after which the jury was recalled.

Appellant contends that the court erred in that he commented upon the evidence of the appellant's witness Brownlee in violation of the rights of the appellant under art. 4, § 16, of the state constitution, by conducting a rigid and extended cross-examination of said witness in the presence of the jury during the progress of the trial, which constituted comment prejudicial and detrimental to the rights of appellant. Appellant relies upon *State v. Crotts*, 22 Wash. 245; 60 Pac. 403; 40 Cyc. 2440; *State v. De Pasquale*, 39 Wash. 260, 81 Pac. 689, and *State v. Jackson*, 83 Wash. 514, 145 Pac. 470.

The rule stated from 40 Cyc. 2440, is as follows:

"In a criminal case the action of the trial judge in subjecting the witnesses of defendant to a rigid and extended examination on the vital points of the defense, or in catechising them at length as to their knowledge of the facts as to which they have testified, has a tendency to discredit them and is prejudicial error requiring a new trial in case of conviction."

In the *Crotts* and the *De Pasquale* cases, the circumstances were very similar. In both cases, important witnesses for the defendant were testifying and were cross-examined by the court in a way which plainly showed that the court discredited the testimony of the witnesses, and in neither of the cases had the witnesses in any way discredited themselves. In the *Jackson* case, relied upon, there had been no occasion to question the witness' credibility until the court intervened and by his line of questions plainly indicated a doubt as to the credibility of the witness' testimony, and thus presented the testimony of the witness to the jury in an unfavorable light. There could be no doubt in any of the cases

cited that the conduct of the court constituted comment upon
the testimony of the witnesses in each case unfavorable and
prejudicial to the party calling the witnesses, and was un-
doubtedly in violation of the constitutional provision that the
court shall not comment upon the evidence otherwise than
by his charge to the jury and then not in any such way as
to indicate the belief of the court as to the nature of the
testimony or its credibility. The matter complained of in
this case, however, does not come within the constitutional
prohibition or the rule announced in the cases cited, for the
reason that here the witness had already discredited herself
by cross-examination properly conducted by the prosecutor,
and the conduct of the court in further examining the wit-
ness was for the purpose undoubtedly of ascertaining for
himself whether the witness was certain as to the nature of
the testimony given by her previously and was certain of
the nature and effect of the testimony given by her in the
present trial, so that no injustice might be done. Having
been satisfied upon that question and during the absence of
the jury, he presented the matter to the prosecuting attorney
as to whether or not the witness should be held for perjury.
This, also, was justifiable and, the witness having admitted
the falsity of her testimony, the fact that she was placed un-
der arrest for perjury for having given the admittedly false
testimony could not in any sense be called prejudicial to the
appellant. In other words, only in case there could be any
question as to the truth or falsity of the testimony was the
appellant entitled to have it go to the jury uninfluenced by
any comment or opinion of the court. But where the testi-
mony was admittedly false and the witness discredited there-
by, the conduct of the court in having such witness held to
answer for a charge of perjury could not in any way preju-
dice the appellant. All that the appellant was entitled to
was a decision of the jury upon conflicting testimony or upon
the testimony adduced as a whole, as to its truthfulness,
credibility, and reliability, and he was not entitled to have

a perjured witness treated as a reliable witness in order that he might possibly escape.

The evidence as a whole justified the verdict of the jury, and the further contention of appellant that the judgment and sentence imposed by the court of four years' confinement in the Washington State Reformatory at Monroe is unreasonable, we do not consider of any consequence. The trial court in such case was charged with the responsibility of determining the punishment to be inflicted according to the conditions and circumstances of the case and of the accused, and there does not seem to have been any abuse of discretion by his Honor in assessing the punishment.

We find no error. The judgment is affirmed.

MORRIS, C. J., PARKER, BAUSMAN, and MAIN, JJ., concur.